```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - x
JONNIE MAE ROBINSON,

                Plaintiff,                06 Civ. 7604 (LLS)

        v.                                OPINION AND ORDER

METROPOLITAN LIFE INSURANCE COMPANY,
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
PLAN AND PLAN ADMINISTRATOR,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - x
```

Plaintiff Jonnie Mae Robinson ("Robinson") claims that Metropolitan Life Insurance Company ("MetLife"), the Skadden, Arps, Slate, Meagher & Flom, LLP Plan ("the Plan") and its Plan Administrator denied her application for long-term disability benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

## Background

This case was previously before this Court under Case Number 05-cv-1534. On May 12, 2006, the Court found that MetLife erred in referring Robinson's claim to an internist and pulmonary specialist because the medical conditions underlying Robinson's claim "were almost entirely neurological in nature." May 12, 2006 Opinion and Order p. 2-3, 5. The Court stated, "there is no basis for granting Ms. Robinson's claim and

directing MetLife to provide her with long-term disability benefits. The record evidence is insufficient to compel the finding that a reasonable fiduciary must grant her claim. A neurological specialist might conclude otherwise." Id. at 5. The Court remanded Robinson's claim to MetLife to reconsider after consultation with a neurological specialist.

On June 14, 2006 MetLife referred Robinson's claim to Joseph J. Jares, III, M.D., a Board-certified neurologist. Dr. Jares concluded that "From a neurological perspective, she has, based upon the most recent documentation, mild residual left-sided weakness, numbness, and pain. However, records suggest her to be otherwise fairly intact and do not indicate what would prevent Ms. Robinson from performing sedentary work in an office type setting." July 16, 2007 Affidavit of Cindy S. Broadwater ("Broadwater Aff."), Ex. A, R70-71.[1] MetLife affirmed its denial of Robinson's claim on July 14, 2006 (after its June 23, 2006 notification that it needed an additional 45 days to review Robinson's claim), but rescinded the denial on August 17, 2006 after discovering that it had not supplied Dr. Jares with all of Robinson's medical records.

MetLife then sent the entire claim file to a third-party vendor, Elite Physicians, Ltd., with instructions to have it

---

[1] "R__" refers to the Bates-stamped pages of MetLife's post-remand claim file attached as Exhibit A to the Broadwater Affidavit. The initial zeros in the Bates numbers have been omitted.

evaluated by a neurologist. Dr. Patrick R. Parcells, a Board-certified neurologist, evaluated the records. In his report dated September 1, 2006, Dr. Parcells stated that "There is no medical information on file to support the inability to perform the duties of her job." Id. at R46.

MetLife realized that Elite Physicians had not forwarded the entire file to Dr. Parcells, so it instructed Elite Physicians to send the entire file back to Dr. Parcells for supplemental review. In his supplemental report dated September 29, 2006, Dr. Parcells stated that the additional materials were predominantly not related to any neurological problem (R39) and did not change his opinion. Id. at R40:

> In review of these extensive records, the further information does not change my original determination.
>
> From the neurological perspective, based on my review of all material provided, the claimant's level of functionality and abilities is for sedentary work. From a neurologic perspective, medical information does not support a continuing disabling condition from August 16, 2002, through present.

On September 21, 2006, Robinson commenced this suit and on October 19, 2006 MetLife denied Robinson's claim.

Both sides move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## Discussion

Robinson concedes that the Plan gives the decision-maker discretionary authority to determine benefit eligibility. When plans grant such discretion, courts do not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious."

However, Robinson argues that an exception under Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98 (2d Cir. 2005) requires that the decision be reviewed de novo. In Nichols, the Second Circuit held that failure to render a timely decision rendered a claim "deemed denied" under ERISA and therefore subject to de novo review. However, "[t]he holding of Nichols is limited to those cases where the administrator fails to respond at all, not those cases where the response is tardy. Where the response is merely procedurally tardy, the denial is still owed deference." Morgenthaler v. First Unum Life Ins. Co., 2006 U.S. Dist. LEXIS 62688 (S.D.N.Y. August 22, 2006). "[T]he case law in this Circuit indicates that where the administrator communicates with the claimant regarding the status of her appeal, acts in good faith, and does not delay its decision unreasonably, its failure to comply with the regulation deadlines may be excused." Pava v. Hartford Life & Accident Ins. Co., 2005 U.S. Dist. LEXIS 41753 (E.D.N.Y. Aug. 24, 2005).

In this case, although MetLife did not issue a decision within the time prescribed by ERISA, its tardiness was not in bad faith. MetLife remained in contact with Robinson's attorney, informed him of the reasons for its delays, and took steps to ensure a full and fair review of Robinson's claim. Therefore, the Court will apply the arbitrary and capricious standard.

Under the "arbitrary and capricious" standard, courts "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285 (1974). The scope of review is narrow. Id. "Under the arbitrary and capricious standard of review, we may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Pagan v. NYNEX Pension Plan, 52 F.3d 438 (2d Cir. 1995), quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

After reviewing Robinson's medical records, Dr. Parcells determined (R46):

> From a neurologic perspective the claimant had a Chiari I malformation with syringomyelia. She underwent surgery on 11/14/00. It was documented by Dr. Holtzman that she was able to return to work on April 30, 2001. This was following an office visit on 4/12/01, where it was noted that she had excellent recovery. MRI showed excellent collapse of the

> syrinx. The wound healing was doing well. She was having improved balance, strength, and swallowing on a followup visit of 4/08/01. From a neurologic perspective, following that evaluation there was no further worsening that would preclude her from having returned to work on April 30, 2001.
>
> There was a subsequent neurosurgical followup on 7/24/03 by Dr. Cuddy, which documented that she was improved, although she had mild weakness of the left upper and lower extremity, as well as sensory changes over the left upper and lower extremities. There was no documentation of an abnormality on examination severe enough to prevent her from doing sedentary work. There is no documentation of any change subsequent to Dr. Cuddy's evaluation of July 24, 2003. Thus from a neurologic perspective, the medical information supports inability to perform her job until April 30, 2001 when she was released to work at that time by Dr. Holtzman and there has been no change in her neurologic condition since that time that would support the inability to perform the duties of her job.

MetLife credited Dr. Parcells' report, which thoroughly analyzed Robinson's medical records and neurological condition, and found that she was not disabled as of August 16, 2002 within the meaning of the Plan. That decision was reasonable and supported by substantial evidence.

Even analyzing her claim de novo, Robinson has not met her burden. See Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006) (claimant has the burden of proving by a preponderance of the evidence that she is disabled in accordance with the plan's terms).

Under the Long Term Disability Plan, an employee is considered disabled if "because of injury or sickness" she

"cannot perform each of the material duties of [her] regular occupation or another occupation . . ." December 12, 2005 Affidavit of Karin T. Mohry ("Mohry Aff."), Ex. A, ML 1963.[2] Based on the treating and reviewing neurologists' analyses, the lack of any underlying neurological examinations leaves Dr. Holtzman's opinion that Robinson could not continue to work after August 16, 2002 without support and insufficient to establish that she was unable to perform the duties of her sedentary job.

On August 28, 2002, Dr. Holtzman stated that Robinson was unable to work. His findings were: "Pain/loss of sensation & control L arm, shoulder, pain in spine, L sided paralysis of vocal cords, HA's [head aches?]." Id. at ML 36. He stated that on October 2, 2002, he advised Robinson not to return to work because "Pt has extreme difficulty travelling to & from work, difficulty with prolonged sitting, standing and walking. All activities have been limited due to multiple problems co-morbidities." Id. at ML 41.

Dr. Parcells was unpersuaded. He listed Dr. Holtzman's statements that Robinson was unable to work, and after each one, pointed out that "no specific neurological examination is

---

[2] "ML ____" refers to the Bates stamped number at the bottom of each page of the exhibits submitted. The Mohry Affidavit was submitted in the previous action.

-7-

noted." In other words, the conclusion had no neurological support (Broadwater Aff., Ex. A, R44):

> On 08/08/02 handwritten note stated that residual syrinx is unchanged. The patient has sleep apnea, left upper extremity swelling, numbness and difficulty swallowing and the note states that the patient should be considered fully disabled. No specific neurological examination is noted. Follow up note and surgical note on 12/02/02 noted that the patient has sleep apnea and that she sleeps with a mask with refills of air and is improved to 35% to 40%. It did note that the patient could not return to work. Again, no specific neurological examination is listed.

Based on his evaluation of Dr. Holtzman's opinion and the other evidence, Dr. Parcells concluded (R46):

> From a neurologic perspective after my review of the extensive records, the medical on file supports claimant's ability to perform the duties of her job from her date last worked of August 16, 2002. There is no medical information on file to support the inability to perform the duties of her job.
>
> . . . .
>
> From a neurologic perspective, the medical information does not support a continuing disabling condition from August 16, 2002 through present.

Robinson's condition was no worse, indeed much improved, a year later. Dr. Cuddy reported on July 24, 2003 that Robinson's left arm and left leg weakness "is much improved from her original complaints" and "She has 4/5 strength in the left upper and lower extremities. She has 5/5 strength in the right upper and lower extremities." Mohry Aff., Ex. A, ML 1356-57. He did not conclude that she was unable to work.

-8-

## Conclusion

In this case where the paramount issues have been defined as neurological, defendants' decision to accept the reasoned opinions of two board-certified neurological specialists, Drs. Jares and Parcells, rather than Dr. Holtzman's unsupported statements, was a reasonable and proper one.

Defendants' motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The Clerk shall enter judgment in favor of the defendants, with costs and disbursements according to law.

So ordered.

DATED: New York, New York
November 2, 2007

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.